In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-3374

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHNTAVIS MATLOCK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:21-cr-00040 — **Matthew P. Brookman**, *Judge.*

ARGUED JANUARY 17, 2025 — DECIDED AUGUST 11, 2026

Before SYKES, HAMILTON, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge*. A jury convicted Johntavis Matlock
of distributing a controlled substance resulting in serious bod-
ily injury to another individual, in violation of 21 U.S.C.
§ 841(a)(1), (b)(1)(C). On appeal, Matlock argues the district
court erred in denying his motion for judgment of acquittal.
For the reasons stated below, we affirm.

## I.   BACKGROUND

### A.  Facts

Johntavis Matlock and Lindsey Wiley were friends who shared a heroin addiction.[1] Matlock sometimes provided Wiley with heroin for purchase and at other times they would ingest drugs together.

On December 11, 2020, Wiley planned to buy a half-gram of heroin from Matlock for $75. They confirmed the sale through text message where Wiley indicated she would pay $55 through Cash App and pay $20 in cash.[2] Wiley's friend, Joshua Britton, agreed to loan Wiley the remaining cash by leaving it in the truck parked outside his home.

While en route to Matlock's residence in Evansville, Indiana, Wiley texted Matlock, requesting that he bring a "bill" when he brought the heroin to her so that she could use the bill as a straw to ingest a small amount of the heroin. Responding through text messaging, Matlock agreed and planned to meet Wiley outside of his home with the bill and the heroin.

In following their plan, Wiley left her home in Reed, Kentucky and arrived at Matlock's house in Evansville, Indiana

---

[1] Heroin falls within a class of addictive drugs known as "Opioids." *See* NAT'L INST. HEALTH, *Opioids*, https://www.drugabuse.gov/drug-topics/opioids [https://perma.cc/YBD3-SW5B] (last updated Nov. 2024).

[2] Cash App is a financial services platform where registered accountholders can send money to other accountholders by using their email address, phone number, or account identifier known as a "$cashtag." CASH APP, *Common Questions*, https://cash.app/send [https://perma.cc/9NWD-XP5N] (last visited Aug. 5, 2026) (choose "How do I send money on Cash App").

around 6:40 P.M., as confirmed by cell phone records. Wiley texted "here" to Matlock's phone. Shortly thereafter, Matlock exited his residence with the bill and requested heroin. Wiley ingested a portion of the heroin, then drove to Britton's house to pick up the remaining $20 she agreed to pay for the heroin.

After retrieving the money, Wiley returned to Matlock's residence around 7:05 P.M. and again texted Matlock "Here." She paid the remaining balance, and she and Matlock ingested heroin together. Wiley left Matlock's home around 7:16 P.M. and arrived home between 22 and 27 minutes later. This coincides with the time it took for Wiley to travel from Evansville, Indiana, to Reed, Kentucky.

Upon her arrival at home, Wiley was greeted by her mother and brother. Wiley's mother testified that she noticed Wiley was behaving oddly before she went into her bedroom to change clothes. After Wiley failed to exit her room after 15 to 20 minutes, Wiley's mom went to check on her. Wiley was found lying face down on her bed, her face was purple, and she was barely breathing. At his mother's instruction, Wiley's brother called 911 at 8:27 P.M.

Christopher Renfrow, an EMT-paramedic, responded to the 911 call along with a team of first responders at 8:43 P.M. He observed that Wiley was unconscious and exhibited signs consistent with an opioid overdose. As paramedics were working to revive Wiley, her mother told the police that Wiley had probably used drugs and overdosed. Wiley's mother also identified that Wiley had Type I diabetes, which was poorly managed at times.

The paramedics administered Narcan through an IV to Wiley. Within a minute, Wiley regained consciousness and

started to communicate. She explained that she had snorted a small amount of heroin.

During this encounter, officers observed several items in Wiley's bedroom, including: insulin syringes, a straw for ingesting drugs, marijuana grinders and pipes with residue inside, one bag of marijuana, a plate with a substance on it, and a "starter kit" that included a tourniquet, swabs, and used syringes. Observing the insulin syringes, Renfrow questioned Wiley about her diabetes.

Wiley was later escorted out of her home and transported to Methodist Hospital in Henderson, Kentucky at 8:57 P.M. for further medical examination.

While at the hospital, Wiley was treated by Dr. James Fouts, an emergency medicine physician, and other medical professionals. When explaining her current state to the medical staff, Wiley disclosed that she had used heroin. Dr. Fouts and the paramedics both determined that Wiley had suffered an opioid overdose. Wiley was released from the hospital at 9:59 P.M.

Later that night, at 10:27 P.M., Wiley texted Matlock, stating, "I overdosed and died, had an ambulance called and everything, be careful with that shit." Matlock responded, "Damn lins please don't over do it." Wiley clarified in a series of text messages that she "only did what [Matlock] saw [her] do," "that [she] got home and stopped breathing," and that her family "had to call 911 … ." Matlock responded by text expressing sympathy for the hospital visit. He also mentioned that he did not want his "conscience" affected should something happen to her, and later replied that he would not forgive himself if something happened to her.

Later, when questioned about her overdose, Wiley told the police that she had purchased heroin from a "black guy that lives in Evansville." Wiley refused to otherwise identify the person who gave her the heroin.

Matlock and Wiley continued to communicate after the December overdose. On February 3, 2021, Matlock texted Wiley to let her know he had "some new shyt" and to offer her what he had left if she wanted to try it. In response, Wiley texted that she "was not getting high anymore" because "the last stuff [she] got made her sick." Undeterred, on February 16, 2021, Matlock texted Wiley again to notify her that "new" product had come in. Wiley did not respond.

About 10 days later, on February 27, 2021, however, Wiley texted Matlock at 10:33 P.M. requesting to purchase heroin. Matlock responded, via text message, "I guess." Within minutes, Wiley's cell phone was mapped near Matlock's home. Wiley returned home around 11:16 P.M. The next morning, unfortunately, Wiley was found dead from a drug overdose.

### B. Procedural History

A federal grand jury indicted Matlock in a four-count superseding indictment, charging him with (1) distributing a Schedule I or Schedule II controlled substance[3] that resulted in Wiley's serious bodily injury on December 11, 2020, in violation of 21 U.S.C. § 841(a)(1) (Count One); (2) distributing a controlled substance that resulted in Wiley's death on

―――――――――――――――

[3] Generally, where "heroin" is referenced herein and in connection with Matlock and Wiley's interactions, it refers to a heroin-fentanyl mixture, which accounts for the fact that heroin is a Schedule I controlled substance and fentanyl is a Schedule II controlled substance.

February 27, 2021, in violation of 21 U.S.C. § 841(a)(1) (Count Two); (3) possessing a firearm as a felon on May 21, 2021, in violation of 18 U.S.C. § 922(g)(1) (Count Three); and (4) possessing a controlled substance or mixture on May 21, 2021, in violation of 21 U.S.C. § 844(a) (Count Four).

The case proceeded to trial. The government presented over 150 exhibits and examined 19 witnesses. At the close of the government's case-in-chief, Matlock orally moved for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(a), on the drug distribution counts that charged him with distributing a controlled substance that caused either a "serious bodily injury," (Count One), or "death," (Count Two). *See* FED. R. CRIM. P. 29(a). Challenging the sufficiency of the evidence as to both counts, Matlock's counsel argued the government's evidence demonstrated "there [were] many other possibilities" for Wiley's earlier overdose and her unfortunate death. The government responded in opposition, and after hearing and considering the parties' arguments, the district court denied Matlock's motion, finding the government had presented sufficient "evidence that would sustain a conviction" for both counts.

The trial continued. Matlock was the only witness offered by the defense. He testified that he sold heroin to Wiley on December 11, 2020, but he contested the fact that it was this heroin that caused Wiley to overdose. Matlock's defense focused on alternate theories for Wiley's overdose in December, including the possibility that Wiley became unconscious from diabetic shock or that she became unconscious from additional drug use made possible by the paraphernalia in her room. Matlock also agreed with the government that he had met with Wiley on February 27, 2021. He testified, however,

that he did not supply Wiley with any heroin that day. Matlock renewed his motion for judgment of acquittal after his testimony. The district court denied Matlock's renewed motion.

Following the Supreme Court's instruction that "but-for" causation is an element necessary to apply the Section 841(b)(1)(C) enhancement, the district court gave the following instruction to the jury for Count One:

### Final Instruction No. 28

> A person's serious bodily injury results from the distribution of a controlled substance when the substance was independently sufficient to have seriously injured the person. Alternatively, a person's serious bodily injury results from the distribution of a controlled substance when the substance combines with other factors to produce serious bodily injury, and where serious bodily injury would not have occurred without the incremental effect of the controlled substance. That is, the distributed controlled substance was "the straw that broke the camel's back."[4]

*See Burrage v. United States*, 571 U.S. 204, 210–11 (2014).

The jury found Matlock guilty of distribution of a Schedule I or Schedule II controlled substance resulting in serious bodily injury in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a firearm by a convicted felon in violation of 18

---

[4] See District Ct. Dkt. 100, Final Jury Instructions, at 29 (quoting *Burrage*, 571 U.S. at 211).

U.S.C. § 922(g)(1) (Count Three); and possession of a controlled substance or mixture in violation of 21 U.S.C. § 844(a) (Count Four). The jury acquitted Matlock on Count Two, which charged him with distribution of a controlled substance resulting in death in violation of 21 U.S.C. § 841(a)(1).

At sentencing, the district court sentenced Matlock to 420 months' imprisonment with 3 years of supervised release to follow.

On appeal, Matlock challenges the sufficiency of the evidence to support the jury's verdict that his heroin was a "but-for" cause of Wiley's overdose on December 11, 2020. Because of the insufficient evidence, Matlock argues the district court erred in denying his motion for judgment of acquittal.

## II.   ANALYSIS

We review the denial of a motion for a judgment of acquittal de novo. *United States v. Crowder*, 164 F.4th 993, 999 (7th Cir. 2026). "[P]ractically speaking, however, the standard of review is that for sufficiency of the evidence." *United States v. Peterson*, 823 F.3d 1113, 1120 (7th Cir. 2016). In a sufficiency-of-the-evidence challenge, we review the evidence presented at trial in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021). We will "affirm the conviction if any rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Peterson*, 823 F.3d at 1120. Although we have often described the burden for this type of challenge as "nearly insurmountable," it is not an impossible one. *United States v. Sorensen*, 134 F.4th 493, 498 (7th Cir. 2025).

Matlock challenges only his conviction on Count One, distribution of a controlled substance resulting in "serious bodily

injury," which "imposes a 20–year mandatory minimum sentence." *Burrage*, 571 U.S. at 206. For a defendant to be sentenced under 21 U.S.C. § 841(b)(1)(C), the government must prove a defendant's conduct was a "but-for" cause of the serious bodily injury of the alleged victim. *Krieger v. United States*, 842 F.3d 490, 504 (7th Cir. 2016). Thus, here, the government had to prove beyond a reasonable doubt that on December 11, 2020, Matlock gave heroin to Wiley and, "but for" that heroin, Wiley's overdose would not have happened. *Perrone v. United States*, 889 F.3d 898, 906 (7th Cir. 2018); *see* 21 U.S.C. § 841(a)(1), (b)(1)(C).

Matlock maintains that the government failed to prove that the heroin he provided on December 11, 2020, was a "but-for" cause of Wiley's overdose, and thus his conviction and the sentencing enhancement must be reversed. Matlock points to four evidentiary facts that he believes prevented the government from establishing "but-for" causation—the presence of other drugs in Wiley's bedroom on the night of the overdose; a lack of toxicology testing of Wiley's urine on the night of the overdose; the possibility that Wiley's overdose was caused by her prescription medications; and the timing between the ingestion of the heroin and her later overdose. We disagree.

The government's evidence included testimony from Wiley's mother and several medical professionals who believed that Wiley suffered a heroin-induced overdose on December 11, 2020. Wiley also orally told paramedics and hospital providers that she had ingested heroin earlier that night. Matlock testified that he had distributed heroin to Wiley on December 11, 2020. And the text messages introduced at trial between Matlock and Wiley contained a message from Wiley

telling Matlock the only heroin she ingested was from his supply. Matlock responded warning her not to "over do it" and sympathizing with the fact that she was hospitalized. Viewing this evidence in the light most favorable to the government, we conclude that the government presented sufficient evidence for the jury to find Matlock's heroin was a "but-for" cause of Wiley's overdose on December 11, 2020. *See, e.g.*, *Perrone*, 889 F.3d at 907–08 (finding the evidence sufficient for the defendant's conviction when the defendant admitted to distributing drugs to the decedent and there was "no evidence that [the decedent] acquired or took" drugs after meeting the defendant).

Matlock resists our conclusion by directing us to *Krieger v. United States* and the Supreme Court's decision in *Burrage v. United States*. In *Krieger*, we explained the "but-for" causation standard from *Burrage* and articulated "that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." 842 F.3d at 500 (quoting *Burrage*, 571 U.S. at 216). In that case, we reversed because the district court did not apply the "but-for" standard, which makes *Krieger* distinguishable from the case before us. Here, on the other hand, the district court pulled directly from the hypotheticals in *Burrage* when it instructed that "serious bodily injury results from the distribution of a controlled substance when the substance was independently sufficient to have seriously injured the person. *See* 571 U.S. at 211 ("Thus, where A shoots B, who is hit and dies, we can say that A actually caused B's death, since but for A's conduct B would not have died." (citation modified)). The court also instructed

that "serious bodily injury results from the distribution of a controlled substance when the substance combines with other factors to produce serious bodily injury, … [t]hat is, the distributed controlled substance was 'the straw that broke the camel's back.'" Thus, we are confident here, unlike in *Krieger*, that the district court properly applied the "but-for" standard.

Matlock's direct reliance on *Burrage* does not move the needle either. In *Burrage*, the Supreme Court held that a defendant's distribution of heroin to a person who died of a drug overdose was not a "but-for" cause of the death because the victim had ingested so many other drugs that no expert could testify that, "but-for" the heroin, the victim would have lived. 571 U.S. at 218–19. The Court found the "but-for" inquiry requires the government to show "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 211 (citation modified).

In Matlock's view, the heroin he supplied to Wiley needed to be an independently sufficient or *definitive* cause of Wiley's overdose. This argument is misplaced. As we explained in *Perrone*, the presence of "other substances in [a victim's] bloodstream" satisfies the but-for causation standard when the drug the defendant provided "pushed [a victim] over the edge." 889 F.3d at 906.

As a final point, Matlock raises two other theories: timing of the December overdose and prescription interaction. For his timing theory, Matlock argues the length of time that passed between Wiley's ingestion of the heroin he provided her and her overdose in December 2020 does not support the jury's verdict because she had forty-seven minutes to ingest other drugs. For his prescription-interaction theory, Matlock argues Wiley poorly managed her health conditions and she

had eleven prescription medications that may have caused an interaction with the heroin he provided. The jury did not find, however, either of these arguments persuasive. When reviewing a denial of a motion for judgment of acquittal, we do not "reweigh the evidence or invade the jury's province of assessing credibility; rather, we will overturn the jury's verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Peterson*, 823 F.3d at 1120 (citation modified).

In Matlock's case, not only did Wiley identify that she only used the heroin Matlock distributed to her, but his response to her accusation was telling. The jury also heard Matlock's testimony that he did indeed distribute heroin to Wiley, which occurred about an hour before she was found unconscious. The jury heard from Renfrow who testified that Wiley's symptoms—based on his training and experience—were caused by an opiate. Several witnesses confirmed at trial that heroin is an opiate. Renfrow also testified that Wiley regained consciousness immediately after receiving Narcan, which suggested that she had ingested an opiate. Renfrow then explained that, if Wiley were in diabetic shock, Narcan would not have revived her. The text messages coupled with the trial testimony from Matlock and the medical professionals support the jury's verdict that Matlock's heroin was a "but-for" cause of Wiley's serious bodily injury on December 11, 2020. *See Perrone*, 889 F.3d at 906.

In sum, we find the jury was presented with sufficient evidence at trial to find Matlock guilty beyond a reasonable doubt on the serious bodily injury charge in Count One. The evidence the government relied on at Matlock's trial was

"[f]ar from being 'woefully insufficient[]' when we view this evidence … in the light most favorable to the government." *United States v. Maggard*, 865 F.3d 960, 977 (7th Cir. 2017).

### III.    CONCLUSION

For these reasons, Matlock's conviction is AFFIRMED.